**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **FULVIO FLETE-GARCIA,**<br>**Petitioner,**<br><br>**v.**<br><br>**WARDEN FLOWERS, FCI DANBURY,**<br>**Respondent.** | No. 3:26-cv-367 (SRU) |

**ORDER ON FLETE-GARCIA'S SECTION 2241 PETITION**

*Pro se* petitioner Fulvio Flete-Garcia is a sentenced inmate in the custody of the federal Bureau of Prisons ("BOP"). He is currently housed at FCI Danbury.[1]

Flete-Garcia has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* Pet. for Writ of Habeas Corpus, Doc. No. 1. In his petition, Flete-Garcia asserts that the BOP removed his earned time credits ("ETCs") under the First Step Act ("FSA") because he has a final order of removal. *Id*. at 1. Warden Flowers, the Warden at FCI Danbury, opposes Flete-Garcia's petition. *See* Resp. to Show Cause Order, Doc. No. 12.

I have carefully considered the parties' submissions and the remainder of the record.[2] For the following reasons, Flete-Garcia's habeas petition, Doc. No. 1, is **DENIED**.

## I. BACKGROUND

Flete-Garcia is a national of the Dominican Republic. *See* Ex. B to Resp. to Show Cause Order, Doc No. 12-3. In 2002, the Government charged Flete-Garcia with Making a False

---

[1] *See* Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc (Register Number 24190-038) (last visited September 22, 2026). I may take judicial notice of content on the BOP's Inmate Locator website. *See United States v. Rivera*, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate locator information).

[2] I consider the record to include material from Flete-Garcia's federal criminal case and his prior federal habeas cases, of which I make take judicial notice. *See Vandever v. Murphy*, 2012 WL 3727646, at *5 n.2 (D. Conn. Mar. 13, 2012) (collecting cases) (taking judicial notice of "documents filed in cases in other courts"); *Lurry v. Ford*, 2014 WL 859270, at *4 (D. Conn. Mar. 5, 2014) (taking judicial notice of judgment filed in plaintiff's criminal case).

Application for a Passport. Information, *United States v. Flete-Garcia*, 1:02-cr-10172 (D. Mass.), Doc. No. 14. Flete-Garcia pled guilty to that offense. *See* Judgment, *United States v. Flete-Garcia*, 1:02-cr-10172 (D. Mass.), Doc. No. 18, at 1. Flete-Garcia was sentenced in July 2002 to a term of imprisonment of 119 days. *Id.* at 2. On August 8, 2002, an immigration judge ordered Flete-Garcia "removed from the United States to [the] Dominican Republic." Ex. D to Resp. to Show Cause Order, Doc No. 12-5, at 1. Flete-Garcia waived his right to appeal the removal order, *id.*, and was removed from the United States on September 21, 2002. Ex. E to Resp. to Show Cause Order, Doc. No. 12-6, at 1.

The Department of Homeland Security ("DHS") issued an immigration detainer in May 2015 after Flete-Garcia "illegally re-entered the country after a previous order of removal or return[.]" Ex. B to Resp. to Show Cause Order, Doc No. 12-3. A month later, the government charged Flete-Garcia with Unlawful Reentry of a Deported Alien, Misuse of a Social Security Number, and Aggravated Identity Theft. Indictment, *United States v. Flete-Garcia*, 1:15-cr-10139 (D. Mass.), Doc. No. 12. Flete-Garcia pled guilty to those offenses. *See* Judgment, *United States v. Flete-Garcia*, 1:15-cr-10139, Doc. No. 48, at 1. The court then sentenced Flete-Garcia to a term of imprisonment of 28 months on April 6, 2016. *Id.* at 1–2.

In December of 2015, the government charged Flete-Garcia in a separate case with Conspiracy to Defraud the United States Government, Conversion of Government Property, Access Device Fraud, and Aggravated Identity Theft. Indictment, *United States v. Flete-Garcia*, 1:15-cr-10381 (D. Mass.), Doc. No. 1. The government added money laundering charges in a superseding indictment filed in March of 2017. First Superseding Indictment, *United States v. Flete-Garcia*, 1:15-cr-10381 (D. Mass.), Doc. No. 90, at 12. Flete-Garcia pled guilty to those offenses. Sentencing Judgment, *United States v. Flete-Garcia*, 1:15-cr-10381 (D. Mass), Doc.

No. 249, at 1. The court sentenced Flete-Garcia to a term of imprisonment of 132 months on December 20, 2017. *Id*. at 2.

Flete-Garcia filed three federal habeas petitions prior to the one at issue today. His first habeas petition, filed in August 2022, alleged that money had gone missing from his inmate trust account. *See* Pet. for Writ of Habeas Corpus, *Flete-Fulvio v. Pullen*, 3:22-cv-1057 (D. Conn.), Doc. No. 1, at 2. District Judge Jeffrey A. Meyer dismissed that petition. 10/6/2023 Am. Order of Dismissal, *Flete-Fulvio v. Pullen*, 3:22-cv-1057 (D. Conn), Doc. No. 26. Flete-Garcia's second petition, filed a month after his first petition, asserted that his transcripts were withheld from him. *See* Pet. for Writ of Habeas Corpus, *Flete-Garcia v. Pullen*, 3:22-cv-1145 (D. Conn.), Doc. No. 1, at 6. Judge Meyer dismissed that petition, too. *See* 9/14/2022 Order, *Flete-Garcia v. Pullen*, 3:22-cv-1145, Doc. No. 4.

Flete-Garcia filed his third habeas petition in June 2023. Pet. for Writ of Habeas Corpus, *Flete-Garcia v. Stover*, 3:23-cv-00746 (D. Conn.), Doc. No. 1. In his third petition, Flete-Garcia alleged, among other things, that he "ha[d] received [FSA] credits changing his release date" but that the "[c]omputation paperwork d[id] not reflect this change due to [an] incorrect calculation of 'good time'" credits. *Id.* at 7. Flete-Garcia "d[id] not dispute that he is subject to a final removal order" in that petition. 11/29/2023 Order, *Flete-Garcia v. Stover*, 3:23-cv-00746 (D. Conn.), Doc. No. 24, at 5 (citing Ex. F to Pet. for Writ of Habeas Corpus, *Flete-Garcia v. Stover*, 3:23-cv-00746 (D. Conn.), Doc. No. 1, at 25) ("I d[o] not have to complete the GED due to me being a deportable alien subject to final deportation."). District Judge Kari A. Dooley denied Flete-Garcia's third petition because, "even if eligible to earn FSA time credits, [Flete-Garcia] is statutorily ineligible to apply FSA time credits as a 'prisoner [who] is the subject of a final order of removal' under the immigration laws." *Id.* (quoting 18 U.S.C. § 3632(d)(4)(E)).

On August 21, 2023, DHS issued a "Warrant of Removal/Deportation" that indicated that Flete-Garcia was "subject to removal/deportation from the United States, based upon a final order by: an immigration judge in exclusion, deportation, or removal proceedings[.]" Ex. C to Resp. to Show Cause Order, Doc. No. 12-4, at 1. The Warrant of Removal indicated that Flete-Garcia was subject to removal under "INA 241(a)(5) to wit: INA 212(a)(7)(i)(I)." *Id.* On April 8, 2026, DHS issued a "Notice of Intent/Decision to Reinstate a Prior Order." Ex. E to Resp. to Show Cause Order, Doc. No. 12-6 at 1. That notice indicated that, "[i]n accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 241.8, [Flete-Garcia] [was] . . . notified that the Secretary of Homeland Security intend[ed] to reinstate the order of [r]emoval entered against [Flete-Garcia] . . . on August 8, 2002 at Boston, MA." *Id.*

Flete-Garcia filed his fourth habeas petition, now before me, on March 11, 2026. Pet. for Writ of Habeas Corpus, Doc. No. 1. In it, he challenges the BOP's "removal" of his ETCs "based upon an alleged 'final order of deportation' that was not signed by an immigration judge but instead allegedly digitally signed by an Immigration and Customs Enforcement ('ICE') agent." *Id.* at 1. Warden Flowers opposes Flete-Garcia's habeas petition and argues that the petition should be dismissed because it is an "an abuse of the writ" and fails on the merits. *See* Resp. to Show Cause Order, Doc. No. 12, at 7-15.

## II. LEGAL STANDARD

A federal prisoner may petition for habeas relief if he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (citations omitted). Habeas

petitioners may therefore seek relief under section 2241 to challenge "the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions," among other matters. *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001) (citation omitted).

Flete-Garcia's contention that the BOP removed his ETCs falls within the categories of challenges that may be brought under section 2241. *See Wilson v. Warden Flowers, FCI Danbury*, 2025 WL 3719411, at *1 (D. Conn. Dec. 23, 2025) (noting that petitioner's contention that "the BOP has refused to apply [p]etitioner's FSA credits . . . falls within the categories of challenges that may be brought under Section 2241"). Flete-Garcia "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, [he] must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citations omitted).

## III. DISCUSSION

Flowers's arguments fall into two categories: (1) a procedural argument that Flete-Garcia "abused the writ" and is therefore precluded from challenging the application of his ETCs,[3] and (2) a substantive argument that Flete-Garcia's petition fails on the merits. I discuss each argument in turn.

### a. Abuse of the Writ

Flete-Garcia has now filed four habeas petitions in the District of Connecticut. Second or successive habeas petitions brought under 28 U.S.C. §§ 2254 and 2255 are subject to certain statutory limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996

[3] Flowers also argues that Flete-Garcia's habeas petition should be dismissed because Flete-Garcia failed to pay the filing fee or move for leave to proceed *in forma pauperis*. Resp. to Show Cause Order, Doc. No. 12, at 8. Flete-Garcia has since paid the filing fee, so that argument is now unavailing.

("AEDPA"). Those statutory limitations do not apply to habeas petitions that are filed pursuant to 28 U.S.C. § 2241. *See James v. Walsh*, 308 F.3d 162, 166 (2d Cir. 2002) (concluding that the "AEDPA applies to petitions brought under the post-conviction remedy statutes, 28 U.S.C. §§ 2254 and 2255, but not to petitions brought under the traditional habeas statute, 28 U.S.C. § 2241"); *but see Gittens v. Menifee*, 428 F.3d 382, 383 n.1 (2d Cir. 2005) (collecting cases) (indicating that the Second Circuit has not "resolved" whether "the AEDPA's gatekeeping standards apply to a second habeas petition filed pursuant to § 2241," but that "[a] number of other circuits" have concluded "that the AEDPA's gatekeeping provisions do not apply to second and successive § 2241 petitions").

Although section 2241 petitions may not be subject to the AEDPA's "gatekeeping standards," *Gittens*, 428 F.3d at 383, successive 2241 petitions are still subject to common law limitations. "Under the common law 'abuse of the writ' doctrine, a court need not entertain a petition that abuses the habeas process." *Esposito v. Ashcroft*, 392 F.3d 549, 550 (2d Cir. 2004). "One frequently recognized indicator of abusiveness is whether the petitioner could have asserted his present claims in his prior petition." *Id.* If a petitioner "fail[s] to appeal a previous unfavorable habeas decision, raising a subsequent habeas petition with the same claim abuses the writ." *Garcia v. Dep't of Homeland Security*, 422 F. App'x 7 (2d Cir. 2011) (summary order). Flowers "bears the burden of pleading abuse of the writ." *Id.*

Here, Flowers maintains that Flete-Garcia abused the writ because Flete-Garcia "previously filed a habeas petition addressing the issue of the application of his FSA time credits and attacking the validity of his final order of removal." Resp. to Show Cause Order, Doc. No. 12, at 7 (citation omitted). For Flete-Garcia to have abused the writ, he had to have brought, or

could have brought, the same claim in both petitions. *See Garcia*, 422 F. App'x at 7; *Esposito*, 392 F.3d at 550.

Flete-Garcia did not bring the same claim in both petitions. In his third habeas petition, Flete-Garcia asserted that he "ha[d] received [FSA] credits changing his release date from September 27, 2026 to September 27, 2025," but that "[c]omputation paperwork d[id] not reflect this change due to [an] incorrect calculation of 'good time'" credits. Pet. for Writ of Habeas Corpus, *Flete-Garcia v. Stover*, 3:23-cv-00746, Doc. No. 1, at 7. In contrast, Flete-Garcia's fourth habeas petition challenges the BOP's "removal" of ETCs "based upon an alleged 'final order of deportation' that was not signed by an immigration judge . . . ." Pet. for Writ of Habeas Corpus, Doc. No. 1, at 1.

Although Judge Dooley earlier concluded that Flete-Garcia "is statutorily ineligible to apply FSA time credits as a 'prisoner [who] is the subject of a final order of removal' under the immigration laws," 11/29/2023 Order, *Flete-Garcia v. Stover*, 3:23-cv-00746 (D. Conn.), Doc. No. 24, at 5 (citation omitted), Flete-Garcia did not assert in his third habeas petition that the BOP removed credits from him due to "an alleged 'final order of deportation' . . . ." Pet. for Writ of Habeas Corpus, Doc. No. 1, at 1. Because he makes that assertion in his fourth petition, but not his third, I conclude that the claims in his third and fourth habeas petitions are not the same.

Flowers argues in the alternative that "even if the Court were to construe this petition as raising slightly different legal theories in attacking the validity of the same final order of removal, [Flete-Garcia] certainly could have raised any of those alternative theories" in his third petition. Resp. to Show Cause Order, Doc. No. 12, at 7. I disagree.

Once a prisoner "earn[s]" ETCs by "complet[ing]" evidence-based recidivism reduction programming or productive activities, 18 U.S.C. § 3632(d)(4)(A), those credits "shall be applied toward time in prerelease custody or supervised release." *Id*. § 3632(d)(4)(C). A prisoner is unable to "appl[y]" ETCs "toward time in prerelease custody or supervised release," *id.*, until the ETCs are "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment[.]" *Id*. § 3624(g)(1)(A). The date on which ETCs may be applied is known as the "conditional release date." *Duah v. Puzio*, 2025 WL 1678447, at *3 (D. Conn. June 13, 2025) (pointing to the "conditional release date" as the date on which the BOP will apply a prisoner's ETCs under section 3624(g)(1)(A)). "At that time, and only at that time," will the BOP apply a prisoner's ETCs under section 3624(g)(1)(A). *Id.* If a prisoner challenges the application of ETCs before his or her conditional release date, the court may dismiss that claim as premature. *See id.* (concluding that petitioner's claim that BOP miscalculated or misapplied ETCs was premature because petitioner had not yet earned credits equaling the amount of time remaining on her sentence).

It is unclear from the record whether Flete-Garcia had approached his conditional release date when he filed his third habeas petition in June 2023. If Flete-Garcia's conditional release date had not yet arrived, any claim alleging that BOP had refused to apply Flete-Garcia's ETCs under section 3624(d)(4)(E) would have been premature at the time that he filed his third petition. *See id.* Because Flowers has not shown that Flete-Garcia had reached his conditional release date when he filed his third habeas petition, I conclude that Flowers has not met her burden of showing that Flete-Garcia abused the writ.

**b. Merits**

The FSA provides that "[a] prisoner . . . who successfully completes evidence-based recidivism reduction programming or productive activities . . . shall earn 10 days of [ETCs] for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). If a prisoner is "at a minimum or low risk for recidivating . . . over 2 consecutive assessments" and "has not increased their risk of recidivism," the prisoner "shall earn an additional 5 days of [ETCs] for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." *Id*. § 3632(d)(4)(A)(ii).

Those ETCs, once earned, "shall be applied toward time in prerelease custody or supervised release." *Id*. § 3632(d)(4)(C). "A prisoner is ineligible to apply time credits under subparagraph (C) if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17)))." *Id*. § 3632(d)(4)(E)(i).

The issue here is whether Flete-Garcia is "the subject of a final order of removal under any provision of the immigration laws . . . ."[4] *Id.* I conclude that he is. Court records show that an immigration judge ordered Flete-Garcia "removed from the United States to [the] Dominican Republic" on August 8, 2002. Ex. D to Resp. to Show Cause Order, Doc No. 12-5, at 1. A removal order "become[s] final upon the earlier of—(i) a determination by the Board of Immigration Appeals affirming such order; or (ii) the expiration of the period in which the alien

[4] Although Flete-Garcia also argues that he was "denied application of the [ETCs] because of an alleged immigration detainer," Pet. for Writ of Habeas Corpus, Doc. No. 1, at 1, it is a "final order of removal," not an immigration detainer, that renders Flete-Garcia ineligible to apply ETCs under section 3632(d)(4)(E). *Mateo v. Warden, FCI Danbury*, 2025 WL 2625263, at *9 (D. Conn. Sept. 11, 2025) (emphasis added) (citing 18 U.S.C. § 3632(d)(4)(E)(i)) (noting that "Congress unambiguously expressed that only those noncitizens who are subject to a *final order of removal* would be ineligible to apply time credits earned under the First Step Act").

is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B). Flete-Garcia waived his right to appeal the removal order on August 8, 2002. *See* Ex. D to Resp. to Show Cause Order, Doc No. 12-5, at 1. The removal order therefore became final on that date. *See* 8 C.F.R. § 1003.39 ("Except when certified to the Board, the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken[,] whichever occurs first.").

Court records also show that, in October of 2015, Flete-Garcia pled guilty to Unlawful Reentry of a Deported Alien. Minute Entry, *United States v. Flete-Garcia*, 1:15-cr-10139 (D. Mass.), Doc. No. 34. That crime requires the government to "prove a defendant was previously removed from the country—a fact usually conclusively established by an order of removal from a prior administrative proceeding before an Immigration Judge ('IJ')." *United States v. Mejia*, 173 F.4th 28, 30 (2d Cir. 2026). Flete-Garcia also acknowledged that he had a final order of removal in both his third habeas petition and in his reply brief in this case. *See* Ex. F to Pet. for Writ of Habeas Corpus, *Flete-Garcia v. Stover*, 3:23-cv-00746 (D. Conn.), Doc. No. 1, at 25 ("I d[o] not have to complete the GED due to me being a deportable alien subject to final deportation."); Flete-Garcia's Reply to Resp. to Show Cause Order, Doc. No. 21, at 2 (stating that Flete-Garcia "was previously removed from the U.S. based on a Final Order in 2002"). Combined, court records and Flete-Garcia's own admissions remove any doubt that he has been the "subject of a final order of removal" since 2002.[5] 18 U.S.C. § 3632(d)(4)(E)(i).

---

[5] For this reason, Flete-Garcia's suggestion that the BOP surprised Flete-Garcia with a final order of removal only after he completed FSA programming is without merit. *See* Pet. for Writ of Habeas Corpus, Doc. No. 1, at 4; Flete-Garcia's Reply to Resp. to Show Cause Order, Doc. No. 21, at 8. By pleading guilty to Unlawful Reentry of a Deported Alien in October of 2015, Flete-Garcia knew, or should have known, that he was ineligible to apply ETCs under section 3632(d)(4)(E) before he began completing FSA programming upon enactment of the FSA in December 2018. *See United States v. Daniels*, 2019 WL 2354388, at *2 (D. Conn. June 4, 2019) (noting that "[t]he [FSA] became effective on December 21, 2018"); *Jacobson v. United States*, 503 U.S. 540, 550 (1992) (observing that a criminal defendant "must be presumed to know the law").

Because Flete-Garcia is the "subject of" a "final order of removal," he is "ineligible" to "apply" any ETCs under section 3632(d)(4)(E). *See id.*; *Cheng v. United States*, 132 F.4th 655, 659 (2d Cir. 2025) (noting that the "FSA, taken as a whole, makes clear that noncitizens with final orders of removal are not eligible for time credits"); *Chang v. Flowers*, 2026 WL 788008, at *3 (D. Conn. Mar. 20, 2026) (citing section 3632(d)(4)(E) and collecting cases) (concluding that "[b]ecause Petitioner was subject to a final order of removal while still in Bureau custody, he is statutorily ineligible to apply any earned time credits toward prerelease custody").

Flete-Garcia's several arguments to the contrary are unpersuasive. First, he argues that "no valid final order of removal has been issued at all against the Petitioner." Pet. for Writ of Habeas Corpus, Doc. No. 1, at 5. He does not dispute that the 2002 Final Order of Removal was issued and signed by immigration judge Leonard Shapiro and entered after a removal hearing. *See* Ex. D to Resp. to Show Cause Order, Doc. No. 12-5, at 1. Instead, Flete-Garcia maintains that his August 21, 2023 Warrant of Removal/Deportation is "invalid because it was not issued by an immigration judge," was "allegedly digitally signed by an ICE agent," and "does not reflect a completed removal hearing." Pet. for Writ of Habeas Corpus, Doc. No. 1, at 5. The Second Circuit has held, however, that an immigration official, rather than immigration judge, may reinstate a prior order of removal. *See Miller v. Mukasey*, 539 F.3d 159, 163 (2d Cir. 2008).

Flete-Garcia's 2002 Final Order of Removal was reinstated by his illegal reentry after removal. DHS's Notice of Intent/Decision to Reinstate Prior Order specifically references "section 241(a)(5) of the Immigration and Nationality Act [] and 8 CFR 241.8"[6] as the legal

[6] The regulation states that "[a]n alien who illegally reenters the United States after having been removed, or having departed voluntarily, while under an order of exclusion, deportation, or removal shall be removed from the United States by reinstating the prior order. The alien has no right to a hearing before an immigration judge in such circumstances." 8 C.F.R. § 241.8.

basis "to reinstate the order of [r]emoval against [Flete-Garcia]." Ex. E to Resp. to Show Cause Order, Doc. No. 12-6, at 1.

Section 241(a)(5) of the INA states that:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . *the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed* . . . and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5) (emphasis added). The statute therefore "expressly prohibits [a court] from giving [an alien] a second bite at the apple." *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 150 (2d Cir. 2008) (citing 8 U.S.C. § 1231(a)(5)); *see also Fernandez-Vargas v. Gonzales,* 548 U.S. 30, 34-35 (2006)). "As the Ninth Circuit put it, '[w]hile aliens have a right to fair procedures, they have no constitutional right to force the government to re-adjudicate a final removal order by unlawfully reentering the country.'" *Id.* (quoting *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 498 (9th Cir. 2007)). The government is also not "required to expend vast resources on extraneous procedures before reinstating a removal order that has already been finalized and executed." *Morales-Izquierdo*, 486 F.3d at 498.

"Reinstatement of removal involves no separate determination of removability, limited procedural protections, and no new removal order." *United States v. Rodriguez*, 162 F.4th 288, 294 (2d Cir. 2025). Moreover, "[a] noncitizen facing a reinstated removal order cannot challenge the underlying order of removal under [section 241(a)(5) of the INA], cannot collaterally attack the underlying removal order in federal court, and cannot ask the [Board of Immigration Appeals] for review as he could with an initial removal order[.]"[7] *Id*. (internal

[7] Even if Flete-Garcia could challenge his final removal order, he must challenge it in the Court of Appeals, not the district court. *See* 8 U.S.C. § 1252(a)(5) (providing, in relevant part, that a "petition for review filed with an appropriate court of appeals … shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter"); *Luya Liu v. Bureau of Citizenship & Immigration Services*,

citations omitted). The Second Circuit has concluded that "this lack of procedural protections 'does not offend due process' because "reinstatement of the prior deportation order does not alter petitioner's legal condition.'" *Id.* (citing *Garcia-Villeda*, 531 F.3d at 150). Accordingly, I reject Flete-Garcia's claim that "no valid final order of removal has been issued at all against" him. Pet. for Writ of Habeas Corpus, Doc. No. 1, at 5.

Flete-Garcia next argues that his "pending I-130 Petition further undermines any claim of finality as to [his] immigration status." *Id.* at 9. In support of his argument, Flete-Garcia claims that "[a] pending immigration petition that may lead to adjustment of status weighs against a finding that removal proceedings are conclusively finalized." *Id.* He further maintains that "[t]here is nothing in the record that would demonstrate that the prior final order of removal in 2002 was not voided by the approval of the I-130 petition." Flete-Garcia's Reply to Resp. to Show Cause Order, Doc, No. 21, at 2.

Flete-Garcia's argument does not have merit because the approval of the I-130 petition does not, by law, void the final order of removal from 2002. Although filing "a Form I-130 Petition for Alien Relative" is "the first step required of a U.S. citizen or permanent resident applying to sponsor a relative for permanent residence," *Penaranda Arevalo v. Bondi*, 130 F.4th 325, 329–30 (2d Cir. 2025), that form does not "entitle" the relative to remain in the United States while their I-130 petition remains pending. *Haxhari v. Gonzales*, 245 F. App'x 62, 63 (2d Cir. 2007) (summary order) (citation omitted). Rather, "[o]nce a Form I-130 is approved," the noncitizen who is seeking permanent residency "must then apply for an adjustment of status."

---

318 F. App'x 21, 23 (2d Cir. 2009) (summary order) (concluding that district court lacked jurisdiction over challenge to final order of removal).

*Agard v. Garland*, 2024 WL 1433337, at *1 n.1 (2d Cir. Apr. 3, 2024) (summary order) (citing 8 U.S.C. § 1255).

Flete-Garcia asserts that his I-130 form was approved in May 2015. Flete-Garcia's Reply to Resp. to Show Cause Order, Doc. No. 21, at 2. But "[e]ven after receiving approval of an immigrant *visa petition,* an alien seeking permanent resident status must also show, among other things, eligibility for an immigrant *visa.*" *Firstland Int'l, Inc. v. United States I.N.S.*, 377 F.3d 127, 129 n.3 (2d Cir. 2004) (emphasis in original) (citing 8 U.S.C. § 1255(a)). The problem for Flete-Garcia is that he "does not appear eligible for adjustment of status at this time." Flowers' Reply in Further Supp. of Resp. to Order to Show Cause, Doc. No. 22, at 2. That is because individuals who "reenter[] the United States illegally after having been removed," 8 U.S.C. § 1231(a)(5), are "ineligible to apply for adjustment of status," *Lema v. Holder*, 363 F. App'x 88, 91 (2d Cir. 2010) (summary order) (citation omitted), and are "permanently inadmissible." *Garcia-Villeda,* 531 F.3d at 151. An exception to that rule exists for individuals who "hav[e] resided outside the U.S. for a minimum of 10 years" prior to seeking the consent of the Homeland Security Secretary to submit a new application for admission. *Id*. (citing 8 U.S.C. § 1182(a)(9)(C)(i)(II) and (ii)). Because Flete-Garcia reentered the United States after having been removed and did not reside outside the United States for 10 years before submitting a new application for removal, I reject Flete-Garcia's claim that his pending visa application somehow undermines his final order of removal.

Lastly, Flete-Garcia argues that BOP's refusal to apply ETCs violates his right to due process. *See* Pet. for Writ of Habeas Corpus, Doc. No. 1, at 2, 6. For Flete-Garcia to state a due process claim, he "must allege a protected liberty or property interest." *Cheng*, 132 F.4th at 659 (collecting cases). "[T]o have a protectable liberty interest, a prisoner must have more than a

hope or a unilateral expectation of release. He must, instead, have a legitimate claim of entitlement to it." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (cleaned up). Federal statutes may, in some cases, create that entitlement. *See Cheng*, 132 F.4th at 659 (cleaned up) (observing that "a protected interest is created where state or federal legislation provides a statutory right to good time credit"). Because Flete-Garcia is a noncitizen with a final order of removal, he has no statutory right to FSA credits. Thus, I conclude that the FSA does not provide Flete-Garcia with a legitimate claim of entitlement, and that his due process claim fails. *See Cheng*, 132 F.4th at 659 (rejecting Taiwanese national's claim that denial of ETCs under section 3632(d)(4)(E) violated his right to due process).

## IV. CONCLUSION

For the foregoing reasons, Flete-Garcia's habeas petition, Doc. No. 1, is **DENIED**.

The Clerk is instructed to close this case.

**SO ORDERED** at Bridgeport, Connecticut this 22nd day of September 2026.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge